Silas E. Kingsley, Appellant, *v.* Silver's Lunch Stores, Inc., Respondent.

First Department, February 13, 1931.

*Pernard Hershkopf* of counsel [*Isidor J. Kresel,* attorney], for the appellant.

*Henry M. Flateau* of counsel [*Charles Eno* with him on the brief], for the respondent.

Sherman, J. Defendant upon trial before the court, without a jury under the usual stipulation, had judgment in its favor, from which this appeal has been taken.

The action is for a broker's commission in selling a long term leasehold on premises known as 801 Sixth avenue, New York city, held by defendant as lessee under a lease having approximately sixteen years to run, which instrument contained an option given by the landlord to the lessee to purchase the premises on or before May 1, 1925, for the sum of $650,000.

In February, 1925, defendant placed in the hands of Menke, a real estate agent, the sale of this lease. Menke associated with him in the enterprise plaintiff, who was also a real estate broker. Plaintiff claims that he and Menke sold this leasehold, upon terms prescribed by defendant, to a purchaser who was ready, able and willing to complete the purchase. He sues in his own behalf and as assignee of Menke.

Plaintiff in February, 1925, was given full and complete details of the important facts concerning the property and the lease, the correctness of which was confirmed by Silver, defendant's president. The statement presented to the intending purchaser embodied these details. Plaintiff brought the matter to the attention of Lewine, a member of a partnership engaged in dealing in real estate in New York city, and asked as a purchase price $150,000. Lewine was primarily interested in buying the fee by means of the option in the lease. Thereupon negotiations were had. Defendant fixed the sum of $125,000 as the purchase price of the leasehold and plaintiff brought Silver to Lewine on February 14, 1925. At that meeting it is clear that an agreement was entered into for the purchase of the lease at the sum of $125,000, accompanied by a promise on the part of the purchaser to divide with defendant any profit that he might make upon the exercise of the option and the sale of the property, before May 1, 1925. The amount of the brokerage was discussed and fixed and Silver agreed to have the contract drawn. Silver postponed the drawing of the contract and thereafter refused to perform. Later, Silver himself exercised the option and shortly sold the property at a profit, through a real estate agent sharing offices with his attorney.

The defense is that the lease itself was not exhibited to the proposed purchaser, Lewine, and that it contains a provision against assignment without the consent of the landlord, and, furthermore, that Lewine would not have entered into a binding contract for the lease without inspection of its terms.

There is, however, no proof that defendant had revealed to the agent or to the prospective purchaser that the lease contained a provision forbidding assignment without the landlord's consent. Indeed, Silver's conduct imported clearly that the lease was freely assignable, otherwise the negotiations should not have been initiated and conducted as they were. While many leases contain a prohibition against assignment without the consent of the landlord, some do not and the court below was in error in assuming that the brokers or the intending purchaser had in mind, or had any reason to suspect, that the lease was not assignable. Nor is it incredible that Lewine was ready to buy the lease without any inquiry into

its specific terms, beyond such as were conveyed to him by the memoranda made up from data confirmed by defendant. The parties clearly understood that he was primarily interested not in the purchase of the leasehold qua lease, but in acquiring the right of purchase carried by that instrument whereby the lessee had the right to buy the premises at $650,000 prior to May 1, 1925, so that upon payment of $125,000 for the lease, the purchaser could acquire the property for $775,000. This was Lewine's object, to attain which he stood ready, able and willing to pay the price demanded. This was known to defendant when it accepted his offer. The brokers performed the task which they undertook for defendant and earned the commission sued for, amounting to $8,350, with interest from February 14, 1925.

The judgment appealed from should be reversed, with costs, and judgment directed to be entered in favor of plaintiff and against defendant in the sum of $8,350, with interest from February 14, 1925, with costs.

DOWLING, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment reversed, with costs, and judgment directed to be entered in favor of plaintiff and against the defendant in the sum of $8,350, with interest thereon to the date of entry of judgment appealed from, and with costs.